UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PERCIVAL CURRITHERS, et al.,

                Plaintiffs,                Case Number 04-10055
                                                          Honorable Thomas L. Ludington

v.

FEDEX GROUND PACKAGE SYSTEM, INC.,
et al.

                Defendant.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST PLAINTIFF FLAGA, CANCELING HEARING, AND
DISMISSING PLAINTIFF FLAGA'S CLAIMS WITH PREJUDICE**

On March 8, 2004, attorneys Edith Thomas and John Smietanka, on behalf of James Lester, James Kassuba, and Ryan Tomaski, filed a putative class action in this Court against Federal Express Corporation, FedEx Ground Package System, Inc., and FedEx Home Delivery (collectively, "Federal Express"). ECF No. 1. The complaint alleged that Federal Express had misclassified the plaintiff pick-up and delivery drivers who were employed as "independent contractors" and not employees. On August 10, 2005, the Judicial Panel on Multi-District Litigation consolidated the case onto a multidistrict litigation ("MDL") docket and it was transferred to the United States District Court for the Northern District of Indiana for coordinated pre-trial proceedings with other employment misclassification actions against Federal Express.

     A second amended complaint was filed on April 18, 2006, by attorney Susan Ellingstad in the MDL docket adding Plaintiffs Percival Currithers, Tyrone Hawkins, and Daniel Lavake. On December 1, 2006, a third amended complaint was filed by attorney Susan Ellingstad on the MDL docket which removed Lester, Kassuba, and Tomaski from the lawsuit as named plaintiffs.

On March 25, 2008, the MDL court denied Plaintiffs' motion for class certification, finding that Plaintiffs' proposed common issues would not predominate over the individualized issue of whether Federal Express exercised control over the plaintiffs' performance of their work responsibilities. The parties on the MDL docket then filed a joint motion requesting an amended scheduling order and for leave for Plaintiffs to file an amended complaint in order to add new plaintiffs as a result of class certification being denied.  The motion was granted by the MDL court on June 19, 2008.  The MDL court permitted the Michigan plaintiffs leave to file an amended complaint to add additional plaintiffs and provided for discovery for the newly added plaintiffs.  A fourth amended complaint was filed September 30, 2008 which added sixteen new plaintiffs: Darrin Ray, Michael Blauvelt, Michael Assaff, Carl Candy, Greg Kane, Anthony King, Thomas Chalker, Rodney Flaga, David Testori, Spencer Williams, Thomas Suchan, Arthur King Jr., Robert Abdullah, Christine Constantino, Scott Baker, and Mark Levine.

On June 2, 2008, Plaintiffs Hawkins, Currithers, and LaVake filed a motion for summary adjudication of employment status on the MDL docket. Plaintiffs asserted in their motion that the court could and should conclude that they were Federal Express employees as a matter of law. Plaintiffs also contended that the final judgment entered in *Estrada v. FedEX Ground Package Systems, Inc.*, 64 Cal. Rptr. 3d 327 (2007), precluded Federal Express from denying that it reserved the right to exercise control and exercised actual control over the work performance of its pickup and delivery drivers based on the contractor pickup and delivery agreement it had with its drivers. Plaintiffs also filed a motion requesting that the Court amend its order denying class certification and enter an order certifying a class of drivers under Michigan law on June 2, 2008, asserting that the facts of the case had been more fully developed and a class should be certified.

The MDL court issued a forty-three page opinion on March 30, 2010, denying Plaintiffs' motion to amend the MDL court's order denying class certification. In denying Plaintiffs' motion to amend, the MDL court reviewed and relied on Plaintiffs' arguments in their motion for summary judgment which contended that the Court could use common evidence to show actual control of the drivers. The MDL court found that "the questions of law or fact common to the members of the class don't predominate over questions affecting only individual members." Furthermore, the MDL court concluded that the liability issues were not subject to class-wide proof but instead required individual, fact-intensive determinations. The individualized issues that the MDL court recognized as affecting the analysis of actual control were: the amount and type of training a driver received, whether the driver contracted with Federal Exress individually or through a proprietorship or corporate entity, whether the driver was required to purchase or lease a particular vehicle, whether the driver's time was flexed or his work area reconfigured without his consent, whether the driver had an annual review, whether the driver hired a helper or replacement contractor and his experience in obtaining Federal Express's approval when hiring, whether the driver had to work certain hours, whether the driver was terminated at-will, and whether the driver sold his route upon termination. In a separate April 21, 2010 opinion, the MDL court also denied Plaintiffs' request to give preclusive effect to the *Estrada* decision.

On August 12, 2010, the MDL court issued an additional order concluding that the issues remaining to receive attention involve individualized determinations and are more appropriately suited for resolution by the transferor court. The order further suggested remand of the instant case to the Judicial Panel on Multidistrict Litigation. Pursuant to the MDL court's instruction in the opinion and order suggesting remand, the parties filed a joint proposed pretrial order on September

13, 2010 which was subsequently adopted by the MDL court pursuant to its final suggestion of remand to the Judicial Panel on Multidistrict Litigation on September 21, 2010. An order lifting the stay of the conditional remand order was filed with this Court on September 24, 2010.

Now before this Court is FedEx Ground's motion for partial summary judgment against Plaintiff Flaga. For the reasons provided herein, the Court will grant FedEx Ground's motion for summary judgment on Flaga's claims based on judicial estoppel or, alternatively, lack of standing and denying Flaga's request for leave to reopen his bankruptcy to schedule the claims because of the time that has passed since FedEx Ground notified him of the basis for judicial estoppel and the age of the case.

## I.   Discussion

Common to all of plaintiffs' claims is the fact that the alleged wrongs giving rise to each claim occurred at or very near the time each plaintiff entered into his contractual relationship with FedEx Ground. Flaga's tenure for FedEx Ground was relatively brief. He first contracted with FedEx Ground on May 30, 2002, and his contract terminated in September 2004. Flaga testified that during his tenure with FedEx he believed that he was being inappropriately treated like an employee and not an independent contractor, but was unaware that any cases had been filed against FedEx Ground or that he had a possible legal claim against FedEx Ground prior to filing his bankruptcy petition. ECF No. 74 Ex. N at 169:9-170:1, 232:16-24.

Flaga filed a voluntary petition for Chapter 13 bankruptcy on April 22, 2005. The petition and supporting papers did not identify any potential claim against FedEx Ground, or that he was a member of a putative class action against the company. ECF No. 74. Ex. C. Flaga did not list his potential claims against FedEx Ground on Schedule B (Personal Property of the Petitioner) as

required by law nor did he include his potential claims against FedEx Ground when he twice amended his bankruptcy schedules—first in June 2005 to clarify his exemptions and statement of financial affairs, and again in June 2007 to update his schedules regarding income and expenditures. ECF No. 74 Ex. C at 7; Ex. F; Ex. H. 20. Flaga similarly did not inform the Bankruptcy Court of his claims when he joined this action as an individual plaintiff in the Fourth Amended Complaint on September 30, 2008. ECF No. 74 Ex. J at ¶ 15.

On October 8, 2008, following Flaga's filing of the Fourth Amended Complaint in this case, the trustee in his bankruptcy issued the Trustee's Notice of Completion of Plan Payments and Notice to Creditors of Right to Object (the "Trustee's Notice"). ECF No. 74 Ex. K. This document gave notice to Flaga's creditors that they had 30 days to object to Flaga's discharge or those objections would be waived. *Id.* No creditor objected. ECF No. 74 Ex. D. On December 18, 2008, the Bankruptcy Court issued the Order Discharging Debtor After Completion of Chapter 13 Plan (the "Discharge"). ECF No. 74 Ex. M. FedEx Ground contends that judicial estoppel and lack of standing preclude Flaga from pursuing his claims in the Fourth Amended Complaint.

### A.   Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for

relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### 1. Authority Regarding a Bankruptcy Debtor's Obligations

"A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 (3d Cir. 1988) (citing *In re Hannan*, 127 F.2d 894 (7th Cir. 1942)); *see also* 11 U.S.C. § 521(a); *Browning Mfg. v. Mims* (*In re Coastal Plains, Inc*.), 179 F.3d 197, 207-08 (5th Cir. 1999) (holding debtors have "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*") (emphasis in

original), cert. denied, 528 U.S. 1117 (2000). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002); *see also* 11 U.S.C. §§ 521(1), 541(a)(7). Fair administration of the bankruptcy estate demands full and fair disclosure of all of the debtor's assets. *See, e.g.*, *Oneida Motor Freight, Inc.*, 848 F.2d at 417 ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"). The dividends provided to creditors stem directly from these disclosures, and the failure to schedule assets can directly impact the creditors' recovery and undermines the entire premise of the system's relief granted to "honest debtors." *See, e.g.*, *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003) ("[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge."). FedEx Ground argues that, by omitting his claims in this action, Flaga committed a fraud on the Bankruptcy Court that cannot be countenanced in law or equity and he should be judicially estopped from pursing this action. In the alternative, FedEx Ground contends that Flaga should be barred from pursing the claims because the trustee, not Flaga, is the actual party in interest and the claims belong to the bankruptcy estate.

### 2. Judicial Estoppel

The primary purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" and to prevent "improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S.

742, 749-50 (2001) (internal quotations and citation omitted). Judicial estoppel is "an equitable doctrine invoked by the court at its discretion." *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). In this Circuit, "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.' " *Id.* at 476 (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (citation omitted)). FedEx Ground contends that Flaga satisfies each of the foregoing factors.

Judicial estoppel, however, should not be applied in cases of conduct amounting to nothing more than mistake or inadvertence, and the Court should also consider whether there is an absence of bad faith. *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894 (6th Cir.2004); *see also Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002). For example, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional. *See Lewis v. Weyehaeuser Co.*, 141 F. App'x 420, 426 (6th Cir. 2005). A debtor's failure to disclose a cause of

action in a bankruptcy proceeding might be deemed inadvertent when (1) the debtor lacks knowledge of the factual basis of the undisclosed claims or (2) the debtor has no motive for concealment. *Id.* (citing *In re Coastal Plains, Inc.*, 179 F.3d at 210). Although Flaga had knowledge of the factual basis of the undisclosed claim, considering his lack of bad faith is nonetheless appropriate in evaluating whether his failure to disclose the cause of action might be deemed inadvertent. Flaga cannot, however, rely on his lack of motive for concealment to establish inadvertence given his knowledge of the factual basis for the claims because "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 F. App'x at 426.

Flaga requests that the Court excuse his actions because by the time he was notified that he had the ability to "opt-in" to a lawsuit, he did not realize that he had an obligation to notify the bankruptcy court. Flaga notes that by the time his attorney in this case was made aware of the bankruptcy, he was advised that the estate could not be re-opened and that after the confirmation of the plan under Chapter 13, the claims became Flaga's property. Flaga also does not believe that disclosure of the claims would have materially impacted his bankruptcy proceedings. FedEx Ground emphasizes that Flaga was obligated to report the potential lawsuit as property even though Flaga had not individually joined the case prior to filing his bankruptcy petition because "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *White*, 617 F.3d at 479 n.5 (quoting *In re Costal Plains, Inc.*, 179 F.3d at 207-08).

The question at issue is whether Flaga can identify any evidence that demonstrates that his omission of the claims in his bankruptcy proceedings was in good faith. FedEx Ground contends that it is irrelevant that it did not "cross[] [Flaga's] mind" to disclose the claim because he did not realize

the legal basis for the claims until August 2008 and his payments to the creditors under the confirmed plan concluded in July 2008. FedEx Ground emphasizes that Flaga's discharge was not granted until three months after Flaga joined the case in the Fourth Amended Complaint, and his obligation to disclose the claims continued until discharge. Both parties offer additional arguments, including FedEx Ground highlighting the protections afforded to the debtor in bankruptcy and the obligations a debtor has to the bankruptcy court and his creditors. While these principles are accurate, they are not particularly relevant in evaluating whether Flaga has demonstrated good faith.

Based on the authority provided in *Eubanks*, Flaga can demonstrate his good faith or, stated otherwise, his lack of bad faith, by showing his attempts to correct the initial omission. Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important. *Lewis*, 141 F. App'x at 424. Furthermore, judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship and the timing of Flaga's effort is also significant. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 480 (6th Cir. 2010). Thus, Flaga's efforts to correct an omission that came before FedEx Ground filed its motion for summary judgment are more important than efforts that came after the motion was filed. *Id.* However, Flaga's actions in this case are not similar to other cases where debtors made "constant affirmative" efforts sufficient to establish good faith as in *Eubanks*. 385 F.3d at 898 (reversing the district court's decision barring the plaintiffs' claim as judicially estopped where the plaintiffs made the court, and the Trustee, aware of the potential civil claim against the defendant before the bankruptcy action closed, although the claim was omitted from the plaintiffs' bankruptcy schedule form). Flaga made no efforts to establish that the Bankruptcy Court was made "aware that the cause of action had been omitted from the bankruptcy petition" nor has he made any

timely attempt to rectify such omission. *Lewis*, 141 F. App'x at 427. At this juncture, Flaga's counsel has inquired about re-opening the bankruptcy estate but he has not taken steps to do so.

Flaga requests that the Court follow the findings in *Finney v. Free Enter. Sys.*, 2011 U.S. Dist. LEXIS 33858 (W.D. Ky. 2011) and conclude that judicial estoppel should not be applied against him. In *Finney*, two of the bankrupt plaintiffs were involved in a collective action brought by shuttle drivers for failure to pay wages and overtime. They sought bankruptcy protection in October 2005 and September 2004, respectively, and they were discharged in March and December of 2005, respectively. They subsequently joined the collective action in 2009. The defendants argued that the plaintiffs' claims had accrued before their discharge, and failure to disclose the claims operated to invoke judicial estoppel. The district court concluded that, although the plaintiffs were unhappy with their lack of overtime pay, they had been advised by their employer that they were not entitled to it and "the mere knowledge that they were not being paid overtime [did] not establish that they knew of the existence of their legal claims." *Id.* at *3.

Flaga's reliance on *Finney* is not persuasive. Flaga argues that he too was aware of how he was treated by FedEx Ground but was unaware that he had a legal claim. Flaga's circumstances, however, are distinguishable. Flaga does not allege, as an initial matter, that FedEx Ground had advised him that treating Flaga as an employee and not an independent contractor was legally acceptable. Flaga also became aware of his claim and was joined as a party by way of the Fourth Amended Complaint before his bankruptcy discharge whereas the plaintiffs in *Finney* did not join an action until nearly four years after they received their bankruptcy discharges. Although the doctrine of judicial estoppel should be applied with caution, *Eubanks*, 385 F.3d at 897, Flaga's failure to disclose his causes of action in a bankruptcy proceeding cannot be deemed inadvertent.

Based on the precedent in this Circuit, Flaga has not demonstrated a lack of bad faith because he took no steps to inform the trustee and the bankruptcy court of the claims despite his duty to do so. Although Flaga arguably may not have had notice of his legal claims at the time his bankruptcy petition was filed, he was obligated to report the claims to the bankruptcy court once they were known even if he thought they were immaterial.

Flaga requests that he be allowed a reasonable time to re-open his bankruptcy estate in the event the Court concludes that judicial estoppel is appropriate. Flaga states Margaret Conti Schmidt, Attorney Administrator for Kripen S. Carroll, Chapter 13 Trustee advised him that a Chapter 13 Trustee does not have the same duties as a Chapter 7 Trustee to collect and liquidate assets, so the Trustee would not be able to agree to abandonment of the claims. Schmidt, however, did indicate that if Flaga were to file a motion to reopen the case pursuant to 11 U.S.C. § 350 and Federal Rule of Bankruptcy Procedure 5010 in order to file amended schedules, she did not anticipate the Trustee having any opposition. FedEx Ground opposes the request because it would encourage future "gamesmanship" and "diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor['s] assets." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002). FedEx Ground notes that it sent a letter to Flaga's counsel in May 2011, stating the company's grounds for seeking judicial estoppel but he has since taken no action to reopen his bankruptcy estate. FedEx Ground argues that further delay is not warranted. *See, e.g.*, *Charboneau*, 2010 WL 148664, at *1, *3 (after giving plaintiff 60 days to reopen, ultimately dismissing because, even though the bankruptcy court reopened the case, the trustee did not definitively abandon the claims). Flaga has not been prohibited by any rule of law or order applicable to this proceeding from seeking the bankruptcy court's authorization to reopen the chapter case. Flaga has not done so. It

-12-

is appropriate to conclude that he is judicially estopped to do so, especially in light of the age of the case.

### 3. Standing

In addition to judicial estoppel, FedEx Ground also argues that it is also entitled to summary judgment because Flaga is not the true party in interest and lacks standing to pursue the claims in the Fourth Amended Complaint. "Standing is a threshold inquiry in every federal case and it involves an inquiry into whether 'a plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction to justify exercise of the court's remedial powers on his behalf.' " *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The plaintiff bears the burden of establishing standing by a preponderance of evidence, and the failure to do so necessitates dismissal of their actions. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

FedEx Ground argues that any interest in the claims against FedEx Ground is the property of the bankruptcy estate, resulting in Flaga having no standing to pursue the claims. *See, e.g.*, *Bauer v. Commerce Union Bank*, 859 F.2d 438, 440-42 (6th Cir.1988) ("The debtor has no standing to pursue such [the estate's] causes of action."); *Rodriguez v. Mustang Mfg. Co.*, No. 07-13828, 2008 U.S. Dist. LEXIS 50098 (E.D. Mich. June 27, 2008) (granting summary judgment on the ground that former debtor lacked standing to pursue claim belonging to the bankruptcy estate)); *Scott v. The Dress Barn Inc.*, No. 04-1298, 2006 U.S. Dist. LEXIS 19404 (W.D. Tenn. Apr. 12, 2006) (granting summary judgment against Chapter 13 debtor who failed to schedule lawsuit on her bankruptcy schedule). The bankruptcy estates' assets include "all legal or equitable interests of the debtor in property as of the commencement of the case" including contracts and legal claims. 11 U.S.C. §

541(a)(1); *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984) (holding that an interest in a contract value, which was contingent on the debtor's appointment being terminated, was estate property)*; In re Van Dresser Corp*., 128 F.3d 945, 947 (6th Cir. 1997) ("it is 'well established that the interests of the debtor in property' include causes of action") (quoting *Bauer*, 859 F.2d at 441). Assets of the bankruptcy estate are within the sole control of the trustee, the only party with standing to maintain actions related to such assets. *See, e.g.*, *In re Van Dresser Corp*., 128F.3d at 947 ("A debtor's appointed trustee has the exclusive right to assert the debtor's claim."); *In re Cottrell*, 876 F.2d 540, 542 (6th Cir. 1989) (holding debtors' legal claim was part of the assets of their bankruptcy estate and could only be administered by the trustee).

Ordinarily, property of the estate not administered at the time the bankruptcy case is closed is abandoned to the debtor. 11 U.S.C. § 554(c). However, where as here, the property has never been disclosed or scheduled as required by the Bankruptcy Code section 521, the close of the case does not affect an abandonment of the property to the debtor; it remains property of the estate. 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."). Accordingly, FedEx Ground submits that Flaga lost his right to enforce the unscheduled legal claims reflected in the Fourth Amended Complaint against FedEx Ground when he received his discharge and cannot do so now. *Bauer*, 859 F.2d 438, 440-42.

Flaga responds that his claims did not vest until after the time of the plan confirmation. Courts have struggled with the question of whether to treat unliquidated assets as abandoned where litigation is required to realize their full value, *see, e.g.*, *Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. N.J. 1995). In this instance, Flaga listed his income and information about his employment with FedEx

-14-

Ground to the best of his then current ability. Flaga simply asserts that he undervalued the asset because he did not contemplate litigation. Generally, "mistakes in valuation will not enable a trustee to recover an abandoned asset," *Hutchins*, 67 F.3d at 44, not even upon "subsequent discovery that the property has a greater value than previously believed." *In re McGowan*, 95 B.R. 104, 106 (Bankr. N.D. Iowa 1988); *accord In re DeVore*, 223 B.R. 193, 197 (B.A.P. 9th Cir. 1998) (recognizing the "general rule that abandonment is irrevocable"). Flaga argues that there is a sufficient basis for this Court to determine that Flaga's income, even in the form of lost earnings recovered in this action, was sufficiently scheduled so as to vest his claim back to the date his plan was confirmed.

Flaga's tenure as an independent contractor with FedEx lasted from May 2002 through September 2004. Because his claims fully accrued before the filing of his bankruptcy in April 2005, these claims are property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). The claims at issue were not scheduled pursuant to Bankruptcy Code section 521 and, thus, were not abandoned at the close of the bankruptcy case. See 11 U.S.C. § 554(c), (d); *see also* 5 Collier on Bankruptcy § 554.03 (16th ed. 2011). As this Court has previously noted, "[i]f the claim is not abandoned . . . the claim 'remains property of the estate.' " *See Charboneau v. Jordan*, 2010 WL 148664, at *2 (E.D. Mich. Jan. 12, 2010) (quoting §554(d) and dismissing action for lack of standing).

Flaga's professed lack of awareness of his legal obligation to amend his schedules has no bearing on the accrual of his claims or their classification as assets of the estate. *See generally Ammons v. La-Z-Boy Inc.*, 2009 U.S. Dist. Lexis 96963, at *18-22 (D. Utah Oct. 20, 2009) (bankruptcy estates were real parties in interest despite fact that, at the time of the bankruptcies, the Utah Supreme Court had not recognized the debtors' cause of action). Courts, including this one,

have recognized that Chapter 13 debtors do not have standing to pursue claims on behalf of the estate. *See, e.g.*, *Johnston*, 2007 WL 128929, at *5 (favorably discussing the court's conclusion in Scott v. Dress Barn that Chapter 13 debtors lack standing); *Harvey v. Lowe's Home Ctrs., Inc.*, 2006 U.S. Dist. Lexis 25697, at *3-4 (W.D. Tenn. Apr. 25, 2006) (holding that Chapter 13 trustee, not plaintiff, had standing to bring the claim).

Moreover, even if Flaga were correct that in some circumstances a Chapter 13 debtor has the right to represent the estate in a lawsuit during the bankruptcy, that right evaporates when the bankruptcy closes. Both *Olick v. Parker & Parsely Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998) and *In re Freeman*, 72 B.R. 850 (Bankr. E.D. Va. 1987), on which Flaga relies to argue that he has concurrent standing with the trustee, arose while the Chapter 13 bankruptcies in question were still open and the suits were pursued for the benefit of the estates. When the bankruptcy closes, the lawsuit becomes property of the estate. *See Hutchins*, 67 F.3d at 43 ("It is equally clear that since the bankrupt estate retains unscheduled assets, only the bankruptcy trustee has the authority to control them."). Accordingly, the unscheduled claims remain assets of the bankruptcy estate, and the authority Flaga advances does not support an alternative conclusion.

## II. Conclusion

Accordingly, it is **ORDERED** that Defendants' motion for partial summary against Plaintiff Flaga (ECF No. 73) is **GRANTED**.

It is further **ORDERED** that the hearing scheduled for January 23, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** that Plaintiff Flaga's claims are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: February 6, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 6, 2012.

s/Tracy A. Jacobs  
TRACY A. JACOBS
