UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PERCIVAL CURRITHERS, et al.,

        Plaintiffs,         Case Number 04-10055
                                                            Honorable Thomas L. Ludington

v.

FEDEX GROUND PACKAGE SYSTEM, INC.,
et al.,

        Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND CANCELING HEARING**

In the 1990s, Plaintiffs Spencer Williams, Michael Assaff, Michael Blauvelt, Anthony King, Scott Baker, and Thomas Suchan all began their careers as contractors for a package pickup and delivery company called RPS, now known (and referred to herein) as FedEx Ground. Plaintiffs now assert claims for (1) rescission,[1] (2) breach of implied contract, (3) unjust enrichment, and (4) fraudulent misrepresentation, all of which are subject to a six-year statute of limitations. For each of these claims, FedEx Ground contends that the limitations period began to run at or very close to the time Plaintiffs first contracted with FedEx Ground, over ten years ago. Plaintiffs' complaint, which was first filed on March 8, 2004, has undergone three amendments and considerable substantive modifications. The operative complaint includes only one cause of action (unjust enrichment) that was alleged in the original complaint. Plaintiffs (as unnamed members of a putative class) did not assert their remaining three claims (declaratory relief, breach of implied contract, and fraudulent misrepresentation) until April 18, 2006.

---

[1]Plaintiffs' rescission claims have since been dismissed and the applicable statute of limitations will thus not be discussed in this opinion and order. ECF No. 117.

Defendants now seek summary judgment against Plaintiffs Williams, Assaff, Blauvelt, and King, and partial summary judgment against Plaintiffs Baker and Suchan because their claims are barred by the applicable statute of limitations even taking into account the applicable tolling periods.[2]

Plaintiff responds that because Defendants' breaches were ongoing, the statute did not accrue at the time each Plaintiff signed his Operating Agreement, and that the statute of limitations on the claims has been tolled since the filing of the original putative class action complaint.

For the reasons provided herein, the Court will grant summary judgment as to the claims of Plaintiffs Williams, Blauvelt and Anthony King and as to Plaintiff Baker's and Suchan's fraudulent misrepresentation claim because their claims are time-barred. FedEx Ground's motion will be denied as to Plaintiff Suchan's and Baker's unjust enrichment and breach of implied contract claims because the claims are timely.

## I.   Facts

This case began on March 8, 2004, when James Lester, James Kassuba, and Ryan Tomaski filed a putative class action (the "Lester Complaint") on behalf of current and former FedEx Ground contractors. ECF No. 75 Ex. 1. The Lester Complaint alleged various federal claims that are no longer at issue, including claims for failure to pay wages, willfulness, and intentional interferences with pension rights, and a claim for unjust enrichment. The complaint alleged that the drivers were misclassified as independent contractors when they were more appropriately classified as employees, that they were subject to direction and control of the manner and means of their work

---

[2]Defendants also included Michael Assaff's claims in their motion, but Assaff has been dismissed from the case for want of prosecution and the statute of limitations applicable to his claims will not be discussed. ECF No. 114.

performance, that they were denied the benefits of employment, and that the costs of doing business were shifted to Plaintiffs. The Lester Complaint defined the putative class as contractors who worked for FedEx Ground in the three-year period preceding the filing of the Lester Complaint—from March 8, 2001 until March 8, 2004. On August 10, 2004, the Judicial Panel on Multi-District Litigation ("JPML") consolidated the case onto a multidistrict litigation ("MDL") docket, after which it was transferred to the United States District Court for the Northern District of Indiana for coordinated pretrial proceedings with other similar actions against FedEx Ground.

On April 18, 2006, Lester, Kassuba, and Tomaski filed a Second Amended Complaint ("Second Amended Lester Complaint") that added three new causes of action: (1) "declaratory action to rescind contract based upon violations of public policy, illegality and fraud in the inducement"; (2) "breach of implied contract (failure to pay plaintiffs as employees)"; and (3) "fraudulent misrepresentation." ECF No. 75 Ex. 2. The Second Amended Lester Complaint defined the class as all persons who worked for FedEx Ground and/or Home Delivery terminals in Michigan, from October 25, 1998 to the time of trial. On December 1, 2006, Plaintiffs filed a Third Amended Complaint alleging the same causes of action as the Second Amended Lester Complaint but replacing the original three named plaintiffs with Plaintiffs Currithers, Hawkins, and Lavake. ECF No. 75 Ex. 3. On March 25, 2008, the MDL Court denied class certification. On September 30, 2008, Plaintiffs filed the operative complaint—their Fourth Amended Complaint—asserting the same claims on behalf of sixteen additional named plaintiffs. ECF No. 85 Ex. D. The factual allegations were expanded, but mirrored the allegations of the original complaint regarding FedEx Ground's alleged practice of inducing contractors to enter into independent contractor agreements through representations that the contractors would be independent business owners and partners with

FedEx Ground. Plaintiffs allege that FedEx Ground treated the contractors as employees but failed to compensate them as employees. *Id.* at ¶3.

Plaintiffs assert claims for rescission, breach of implied contract, unjust enrichment, and fraudulent misrepresentation. Defendants contend that "[c]ommon to all of Plaintiffs' claims is the fact that the alleged wrongs occurred at or immediately after the time each Plaintiff entered into his contractual relationship with FedEx Ground or began providing services pursuant to the Operating Agreement." ECF No. 75 at 5. Plaintiffs clarify that they are instead alleging that FedEx Ground's misrepresentations were made during the course of the relationship, particularly around the time the plaintiffs were asked to renew their contracts. Plaintiffs also submit that their claims for breach of contract and unjust enrichment span the entire relationship and arise from the consistent misclassification as independent contractors.

Plaintiffs' breach of implied contract and unjust enrichment claims both rest on essentially the same allegation: that while FedEx Ground adhered to the written terms of the Operating Agreement, the company failed to equitably and legally compensate Plaintiffs for their services. Specifically, the breach of implied contract claim alleges that FedEx Ground breached an implied promise to bear the costs associated with an employer-employee relationship, *id.* at ¶¶ 89-94; and the unjust enrichment claim alleges that FedEx Ground accepted Plaintiffs' services but shifted the costs associated with a employer-employee relationship to them, *id.* at ¶¶ 95-99. In their fraudulent misrepresentation claim, Plaintiffs reassert as an independent cause of action the same allegations that they claim entitle them to rescind their Operating Agreements. That is, Plaintiffs allege that FedEx Ground induced them to enter into their respective Operating Agreements by misrepresenting that Plaintiffs (1) would "have their own independent business that will be a 'partner' with [FedEx

Ground]; (2) could "acquire multiple routes as part of their 'business'"; (3) would "have the ability to determine their own level of income through their own work and effort"; (4) would "own and have an entrepreneurial interest in" their delivery routes, which (5) had "economic value in excess of the cost of [Plaintiffs'] truck and [could] be sold"; and (6) could "be [their] own boss" and "have the ability to grow [their] own business[es]." *Id.* at ¶¶ 101-106.

## II. Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 251-52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

### III.   Discussion

#### A.   Applicable Statute of Limitations

A breach of an implied contract claim and a fraudulent misrepresentation claim are both governed by a six-year statute of limitations. Mich. Comp. Laws § 600.5807(8); *Abbott v. State*, 6 N.W.2d 900, 901 (Mich. 1942) (six-year statute of limitations period "applies equally to express or implied contracts"); *see Kuebler v. Equitable Life Assurance Soc'y of the United States*, 555 N.W.2d 496, 499 (Mich. Ct. App. 1996); *see also* Mich. Comp. Laws § 600.5813 ("[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes"). Plaintiffs' unjust enrichment claims are "the equitable counterpart of a legal claim for breach of contract."  *Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, No. 260320, 2007 WL 1264008, at *8 (Mich. Ct. App. May 1, 2007). As such, they are governed by the six-year limitations period. *Mercy Servs. for Aging v. City of Rochester Hills*, No. 292569, 2010 WL 4137465, at *3 (Mich. Ct. App. Oct. 21, 2010); *see* Mich. Comp. Laws § 600.5807(8) ("[t]he period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract").  Plaintiffs do not dispute that their claims are subject to a 6-year statute of limitations.

### B. Accrual of Plaintiffs' Claims

Under Michigan law, a claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damages result." Mich. Comp. Laws § 600.5827. The limitations period begins to run when the claim accrues. *Id.* Michigan courts interpreting these provisions have held that the wrong "was done" when the defendant's act harmed the plaintiff, not when the defendant's conduct occurred. *See Stephens v. Dixon*, 536 N.W. 2d 755, 756 (Mich. 1995) (discussing claim accrual for negligence actions). This is true regardless of when the plaintiff discovered his claim. Indeed, Michigan's statutory accrual provision forecloses the use and application of the common-law discovery rule. *See Trentadue v. Gorton*, 738 N.W.2d 664, 670-72 (Mich. 2007) (mandating that "courts may not employ an extrastatutory discovery rule to toll accrual in avoidance of the plain language of MCL § 600.5827"); *see also Boyle v. General Motors Corp.*, 661 N.W.2d 557, 560 (Mich. 2003) (finding that the accrual provision in MCL § 600.5827 precluded the use of the discovery rule in fraud cases). Accordingly, each of the Plaintiffs' claims accrued, and the limitations period began to run, when FedEx Ground's conduct allegedly began causing harm to the Plaintiffs. FedEx Ground argues that, assuming any harm occurred, it occurred when Plaintiffs began work as contractors pursuant to their Operating Agreements. As will be explained below, Plaintiffs do not dispute when the claims first accrued, but argue that the continuing wrongs doctrine applies and that there are separate claims that accrued during the statutory period.

### 1. Plaintiffs' Breach of Implied Contract Claim

A breach of contract claim accrues "on the date of the breach, not the date the breach is discovered." *Michigan Millers Mut. Ins. Co. v. W. Detroit Bldg. Co., Inc.*, 494 N.W.2d 1, 4 n.1 (Mich. Ct. App. 1992). The same is true with respect to claims for breach of an implied contract. *See*

*Vutci v. Indianapolis Life Ins. Co.*, 403 N.W.2d 157, 164 (Mich. Ct. App. 1987). Plaintiffs allege that FedEx Ground "breached the implied contract … by systematically avoiding the payment of the reasonable value of the services provided, otherwise avoiding the costs associated with the employment relationship and shifting the costs of doing business to the Plaintiffs." *Id.* at ¶ 94. FedEx Ground construes Plaintiffs' breach of implied contract claims as resting on the allegation that FedEx Ground entered into employer-employee relationships with Plaintiffs but, under the Operating Agreement, structured their financial relationships as if Plaintiffs were independent contractors. Plaintiffs claim that, from the inception of their relationship, FedEx Ground breached an implied agreement to treat Plaintiffs as employees by forcing them to incur costs that the company, as their employer, was legally obligated to pay. Thus, FedEx Ground contends that Plaintiffs' breach of implied contract claims accrued when each Plaintiff began providing pick up and delivery services pursuant to the Operating Agreement.

Plaintiffs contend, as will be discussed in more detail below, that FedEx Ground's wrongful acts continued throughout the duration for the relationship and successive contract periods and that "every day Defendants misclassified Plaintiffs constitutes a new actionable violation or breach." ECF No. 85 at 28.

### 2.   Plaintiffs' Fraudulent Misrepresentation Claim

Where a plaintiff has alleged being fraudulently induced to enter into a contract, the alleged wrong was committed and the cause of action accrued when the plaintiff entered into the contract. *See Romeo Inv.*, 2007 WL 1264008, at *3 (where plaintiff claimed he was fraudulently induced to enter into a contract, the cause of action accrued at the time the plaintiffs entered into the contract). Federal courts in this district have reached similar conclusions. *See Mekani v. Homecomings Fin.*,

LLC, 752 F. Supp. 2d 785, 790-91 (E.D. Mich. 2010) (applying Michigan law and finding that the plaintiff's fraud claim based on misrepresentations in a loan transaction accrued at the time the loan transaction closed); *Lorimer v. Berrlez*, 331 F. Supp. 2d 585, 592-93 (E.D. Mich. 2004) (holding in a fraudulent misrepresentation case that the statute of limitations "begins to run when the misrepresentation was perpetrated and not when the plaintiff discovered or should have discovered the misrepresentation"). FedEx Ground characterizes Plaintiffs' fraudulent misrepresentation claim as alleging that FedEx Ground induced them to execute the Operating Agreement through material misrepresentations regarding the nature of Plaintiffs' relationship with FedEx Ground. These misrepresentations allegedly occurred before Plaintiffs signed their respective Operating Agreements, because Plaintiffs claim to have relied on the misrepresentations to their detriment when they signed the contracts and the "wrong" Plaintiffs have alleged occurred when they entered into the Operating Agreements. *See Harris*, 483 N.W.2d at 436. Moreover, FedEx Ground argues that the only relevant contract for purposes of Plaintiffs' fraudulent misrepresentation claims is each Plaintiff's first contract because Plaintiffs' alleged reliance on the same or similar misrepresentations when entering into later contracts would have been unreasonable, and therefore not actionable. *See Foreman v. Foreman*, 701 N.W.2d 167, 175 (Mich. Ct. App. 2006); *see also Nieves v. Bell Indus., Inc.*, 517 N.W.2d 235, 238 (Mich. Ct. App. 1994).

Plaintiffs contend that the alleged fraudulent misrepresentations are not limited to those made before each entered into his first Operating Agreement because subsequent representations were made by Defendants to renew their contracts when FedEx acquired RPS in 2000 and that additional misrepresentations were made to induce Plaintiffs to continue providing services based upon "enhancements" to the independent contractor model. Plaintiffs argue that each event is

independently actionable.

### 3. Plaintiffs' Unjust Enrichment Claim

"A quasi-contractual obligation," like a claim for unjust enrichment, "arises when a defendant receives a benefit from a plaintiff which is inequitable for the defendant to retain." *Hofmann v. Auto Club Ins. Ass'n*, 413 N.W.2d 455, 457 (Mich. Ct. App. 1987). Here, the Plaintiffs allege that they were wrongfully required to purchase delivery trucks or the FedEx Ground business support package, that they were micro-managed, and that they were required to otherwise wrongfully bear the cost of an employment relationship.

It is undisputed that Plaintiffs incurred expenses, such as the cost of insuring and buying or leasing delivery trucks, at or near the time they signed their Operating Agreements. *See, e.g.*, ECF No. 75 Ex. 6 at 50:10-13, 52:8-25. The practices which Plaintiffs claim constituted "micro-management" and "cost shifting," such as requiring contractors to pay for and wear FedEx Ground uniforms, also began when Plaintiffs started work as contractors. *Id.* at 50:19-21. Plaintiffs maintain that, as a result of these "systematic" practices, they incurred costs that properly belonged to FedEx Ground, and the company received the benefit of Plaintiffs' services for less than they were entitled to be paid. Accordingly, the alleged "unjust enrichment" began when Plaintiffs began providing services under the Operating Agreement, at or shortly after the time Plaintiffs entered their contractual relationship with FedEx Ground.

FedEx Ground argues that Plaintiffs cannot rely on the continuing wrong doctrine to argue for a different result and that Plaintiffs' unjust enrichment claims accrued at or very near the time Plaintiffs signed their Operating Agreements with FedEx Ground. Not only because the Michigan Supreme Court has held that "the [continuing wrong] doctrine has no continued place in the

jurisprudence of this state," *see Garg*, 696 N.W.2d at 662, but because the Michigan Court of Appeals has specifically rejected its application in cases involving the type of business torts alleged here. *See Blazer Foods*, 673 N.W.2d at 809 (refusing to apply the continuing wrong doctrine to a cause of action for repeated breaches of franchise agreements).

Like Plaintiffs' breach of implied contract claims, Plaintiffs argue that each day they were misclassified provides a separate actionable claim for unjust enrichment.

### C.  Tolling

In *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974), the Supreme Court held that the commencement of a class action suit tolls the applicable statute of limitations for all class members who would have been parties had the suit been permitted to continue as a class action. The Court tolled the statute of limitations because class actions are designed to "avoid, rather than encourage, unnecessary filing of repetitious papers and motions," 414 U.S. at 550, and because the "policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights, are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." 414 U.S. at 554-55 (citations omitted). In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-52 (1983), the Court extended the tolling of the statute of limitations to those bringing individual actions after class certification is denied, and to those electing to opt out of the class action to file individual claims. In his concurrence, however, Justice Powell cautioned that, "[t]he tolling rule of American Pipe is a generous one, inviting abuse[,]" and it "should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class

status." 462 U.S. at 354 (Powell, J., concurring). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 354; *see also Wells v. FedEx Ground Package System, Inc.*, No. 4:10CV2080 JCH, 2011 WL 1769665, at *4 (E.D. Mo. May 9, 2011) (tolling of the statute of limitations in a putative class action ended when certification was denied and did not continue through the filing of a motion to amend or an appeal).

Based on the protections provided in *American Pipe*, the statute of limitations was tolled at the very least, from the April 18, 2006 filing of the Second Amended Lester Complaint as to Plaintiffs' fraud and breach of implied contract claims. The statute of limitations for Plaintiffs' unjust enrichment claim was tolled from the filing of the original complaint through denial of class certification. Plaintiffs, however, argue that the statute should be tolled from the filing of the original complaint as to their breach of implied contract and fraud claims because the factual and legal foundation for the claims in the original complaint was FedEx Ground's systemic mischaracterization and control of drivers, such that they were employees as opposed to contractors. Plaintiffs argue that the subsequent amendments assert the same basic theory of liability and they should be entitled to the benefit tolling from the original complaint. *Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001) ("[u]nder *American Pipe*, the statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised in the initial complaint").

The factual allegations in the original complaint provided FedEx with "sufficient notice of the contours of potential claims to toll the running of the statute of limitations" as to the claims

added in the Second Amended Lester Complaint. *Cowles*, 476 Mich. at 22-23. The claims in each complaint are predicated on FedEx's alleged mischaracterization and control of Plaintiffs, thus treating them as employees instead of independent contractors. The claims alleged in the Second Amended Complaint share a common factual and legal nexus with the claims asserted in the original complaint, at least to the plaintiffs included in the putative class period in the original complaint. Plaintiffs also did not attempt to plead different or peripheral claims in the Fourth Amended Complaint after class certification was denied. FedEx Ground offers no authority from Michigan or the Sixth Circuit to suggest that this conclusion is without merit. Accordingly, tolling began on Plaintiffs' breach of implied contract and fraud claims on March 8, 2004, when the original complaint was filed and continued through the March 25, 2008 denial of class certification. The only exception is Plaintiff Williams' claims because he was not included in the original complaint because his relationship with FedEx Ground ended before the putative class period described in the original complaint. *See Weston*, 265 F.3d 366, 368 (6th Cir. 2001) ("[u]nder American Pipe, the statute of limitations for *putative class members of the original class* is tolled only for substantive claims that were raised, or could have been raised in the initial complaint"). Williams' claims are thus only appropriately tolled from the filing of the Second Amended Lester Complaint and his claims are time-barred unless Plaintiffs can establish a viable theory of ongoing wrongful acts, which will be discussed more fully hereafter.

Tolling on Plaintiffs' fraud claim ended when it was excluded from Plaintiffs' motion for class certification on April 2, 2007 and began to run until the Fourth Amended Complaint was filed on September 30, 2008. *See Wells*, 2011 WL 1769665, at \*5-6 (concluding that tolling as to a claim pleaded in the putative class action complaint ended when the plaintiffs did not seek certification

of that claim). The limitations period on Plaintiffs' breach of implied contract and unjust enrichment claims began to run from March 25, 2008, when class certification was denied until the Fourth Amended Complaint was filed on September 30, 2008.

As a result, Suchan's and Baker's breach of implied contract claims are not time-barred because they accrued, at the very earliest, in March and August 1999, respectively, and were only required to be acted on after September 13, 1998, to be timely. The September 13, 1998, date is calculated by subtracting six years from the date that the original complaint was filed and adding the 189 days between the denial of class certification and the filing of the Fourth Amended Complaint. FedEx Ground does not challenge the timeliness of Baker's or Suchan's unjust enrichment claim.

547 days elapsed between the exclusion of the fraud claim from the motion for class certification and the filing of the Fourth Amended Complaint, requiring that Plaintiffs' fraud claims (excluding Williams) to accrue after September 1, 1999. None of the Plaintiffs' fraudulent misrepresentation claims accrued by this date, based on FedEx Ground's timeline including the dates each Plaintiff entered into their first Operating Agreement which Plaintiffs' do not dispute, and are thus untimely. As a result, Plaintiffs Blauvelt, King, and Williams have claims that are timely only if Plaintiffs establish that actionable, ongoing wrongs occurred within the statutory period such that the continuing wrongs doctrine applies. *See* ECF No. 76 Exs. 7.1, 7.3 (demonstrating FedEx Ground's contention that Blauvelt's claims accrued in October 1989, Assaff's claims accrued in July 1990, King's claims accrued in September 1996, and Williams' claims accrued in February 1999).

**D. Relation Back**

Plaintiffs also argue that, in addition to the protections of *American Pipe*, they are also

entitled to the "relation back" protections of the Court's amendment process and the claims pleaded in the Fourth Amended Complaint on September 30, 2008, relate back to the date of the original pleading. The case authority, however, suggests that the relation back doctrine does not apply in putative class actions because putative class members are not considered parties prior to a class certification ruling. *See Hall v. State Farm Mut. Auto Ins. Co.*, No. 05-2530, 2007 WL 215662, at *4 (6th Cir. Jan. 29, 2007) (applying Michigan law); *Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798, 802 (N.D. Ohio 2007). Therefore, when the identity of putative class members is changed or when putative class members become named plaintiffs, they are new parties, asserting new causes of action, and relation back is unavailable. *See Barnes*, 473 F. Supp. 2d at 801. Thus, the relation back doctrine is not available or applicable to the original putative class action complaint from the Second Amended Lester Complaint adding Williams as a putative class member or the Fourth Amended Complaint as to Plaintiff Williams. *See United States ex rel. Statham Instruments, Inc. v. W. Cas. & Surety Co.*, 359 F.2d 521, 523 (6th Cir. 1966); *see also Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973).

### E.   Ongoing, Actionable Wrongs

FedEx Ground argues that Plaintiffs' claims all accrued more than six years before the filing of the initial complaint and that they are unable to establish continuing breaches or violations during the six-year period. Plaintiffs respond that their causes of action span the duration of their relationship with FedEx Ground, but did not begin until FedEx Ground owed them a legal duty—the date on which they acquired RPS and began contracting with Plaintiffs. Plaintiffs rely on *Stephens*

*v. Dixon* for this proposition. 449 Mich. 531, 539 (Mich. 1995) (outlining the elements for an action for damages for tortious personal injury). It is unclear how *Stephens* supports this principle. Plaintiffs, however, emphasize that their position is consistent with Defendants' assertion that the "limitations period began to run, when FedEx Ground's conduct allegedly began causing harm to the Plaintiffs." ECF No. 75 at 8. Plaintiffs assert that a review of the complaints demonstrate that the allegations are not limited to the time period each plaintiff entered into an Operating Agreement, but rather, spanned the entire relationship.

Plaintiffs advance *Harris v. Allen Park*, 193 Mich. App. 103, 107 (1992), as instructive. In *Harris*, every periodic payment made that was alleged to be less than the amount due plaintiffs constituted a continuing breach of contract and the court held that the limitation period ran from the due date of each payment. Plaintiffs note that the additional cases cited by FedEx Ground are based on a single act of breach, not an ongoing relationship premised on a series of breaches. Plaintiffs also rely on *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, as illustrating the difference between a continuing damage from a single breach, which is precluded by operation of the statute, and a series of repetitive breaches, in which case each breach is a separate, actionable wrong. 259 Mich. App. 241, 252 (2003) ("when . . . a second breach occurs, it should give rise to a separate claim for specific damages arising from the second breach, whether or not the contract is deemed an installment contract.").

In Michigan, a continuing wrong is established by continual tortious acts, not by continual harmful effects from an original, completed act. *See Difronzo v. Port Sanilac*, 166 Mich. App. 148 (1988); *Hodgeson v. Genessee Co. Drain Comm'r*, 52 Mich. App. 411 (1974). Where a defendant's wrongful acts are of a continuing nature, the period of limitation does not run until the wrong is

abated and a separate cause of action can accrue each day that defendant's tortious conduct continues. *Horvath v. Delida*, 213 Mich. App. 620, 626 (1995).

Plaintiffs emphasize that Defendants committed repeated wrongful acts through the duration of each of Plaintiffs' successive contract terms and Plaintiffs relied on the continuing misrepresentations. More specifically, Plaintiffs allege that after FedEx Ground assumed RPS in 2000, it made many representations to persuade drivers to renew their agreements with FedEx, and to continue providing services based upon "enhancements" to the independent contractor model. Plaintiffs argue that each day Defendants misclassified Plaintiffs constitutes a new actionable breach of implied contract claim and unjust enrichment claim, and Plaintiffs request that they be permitted to pursue their claims for violations that occurred between March 8, 1998 and the present.

FedEx Ground contends that *Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 283 Mich. App. 264, 288 (2009), recognized that the common-law continuing wrong doctrine has been completely and retroactively abrogated under Michigan law. *Marliyn Froling*, however, recognized that the continuing wrong doctrine no longer applied when the alleged wrongful acts are finite and only continuing harmful effects remained. *Id.* at 284. In other words, "the accrual of the claim occurs when both the act and the injury first occur, that is when the 'wrong is done,' " and "[s]ubsequent claims of additional harm caused by one act do not restart the claim previously accrued." *Id.* at 250-51.

Application of the "continuing wrong" doctrine has been rejected in the context of claims for breach of contract, and is thus inapplicable to Plaintiffs' breach of implied contract claim or unjust enrichment claim, which is a quasi-contract claim. *Blazer Foods*, 259 Mich. App. at 251 ("Plaintiffs have identified no cases extending the continuing wrong or continuing services theories

-17-

to a situation in which a party to a contract fails to perform adequately under the contract."). Application of the doctrine to Plaintiffs' fraudulent misrepresentation claim is less clear, because claims alleging fraudulent misrepresentation need not necessarily sound in tort. *Wilcoxon v. Wayne County Neighborhood Legal Services*, 252 Mich. App. 549, 553 n.4. Depending on the circumstances, they could be understood as a waiver of a tort action in favor of seeking restitution under a theory of quasi-contract. *Id.* Plaintiffs do not allege that the misrepresentations sounded in tort, but contend that the misrepresentations were made to induce Plaintiffs' reliance, such that they would enter into the Operating Agreement and believe they would be treated as independent contractors. The continuing wrongs doctrine may not be applied to Plaintiffs' fraudulent misrepresentation claims because the claims sound in contract and the continuing wrong doctrine no longer applies to contract claims under Michigan law.

### IV. Conclusion

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (ECF No. 75) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the hearing scheduled for January 23, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** Plaintiffs Williams', Blauvelt's and Anthony King's claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff Baker's and Suchan's fraudulent misrepresentation claims are **DISMISSED WITH PREJUDICE**.

                                                s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

Dated: February 13, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 13, 2012.

                s/Tracy A. Jacobs
                TRACY A. JACOBS